# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 13-2481

### CHETTY HOLDINGS, INC. and
### CARL E. CHETTY, trading as
### MILLVIEW APARTMENT HOMES, LP

*Appellants,*

v.

### NORTHMARQ CAPITAL, LLC
and
### TIMOTHY C. KUHN

*Appellees.*

## APPELLANTS', CHETTY HOLDINGS, INC. and CARL E. CHETTY, trading as MILLVIEW APARTMENT HOMES, LP, BRIEF AND APPENDIX VOLUME I

**MARSHALL DENNEHEY, WARNER, COLEMAN & GOGGIN**
James G. Lare, Esquire
Carol A. VanderWoude, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jglare@mdwcg.com/
cavanderwoude@mdwcg.com
(215) 575-2600 (telephone)
(215) 575-0856 (facsimile)
Attorneys for Appellants,
Chetty Holdings, Inc. and Carl E. Chetty,
Trading as Millview Apartment Homes, LP

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, _____ Millview Apartment
Homes, LP and Chetty Holdings, Inc. _____
(Name of Party)

    1) For non-governmental corporate parties please list all parent
corporations:

N/A

    2) For non-governmental corporate parties please list all publicly held
companies that hold 10% or more of the party's stock:

N/A

    3) If there is a publicly held corporation which is not a party to the
proceeding before this Court but which has as a financial interest in the outcome of
the proceeding, please identify all such parties and specify the nature of the
financial interest or interests:

N/A

    4) In all bankruptcy appeals counsel for the debtor or trustee of the
bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2)
the members of the creditors' committee or the top 20 unsecured creditors; and, 3)
any entity not named in the caption which is active participant in the bankruptcy
proceeding. If the debtor or trustee is not participating in the appeal, this
information must be provided by appellant.

N/A

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................... iii

JURISDICTIONAL STATEMENT.......................................... 1

STATEMENT OF THE ISSUE............................................... 2

RELATED CASES AND PROCEEDINGS................................... 2

STATEMENT OF THE CASE................................................. 3

STATEMENT OF THE FACTS............................................... 5

SUMMARY OF THE ARGUMENT........................................... 12

ARGUMENT.................................................................. 14

    I.     STATEMENT OF THE SCOPE AND STANDARD OF
           REVIEW................................................................ 14

    II.    THE DISMISSAL OF THE THIRD AMENDED
           COMPLAINT SHOULD BE REVERSED, BECAUSE
           CHETTY SUFFICIENTLY ALLEGED SPECIFIC FACTS
           THAT, ACCEPTED AS TRUE, DEMONSTRATE A
           PLAUSIBLE SHOWING OF PROXIMATE CAUSE......... 16

           A. NorthMarq's Negligent Professional Advice and Conduct,
               as Alleged, was a "Substantial Factor" in Causing Chetty's
               Harm................................................................. 17

           B. The District Court, by Weighing the Impact of Other
               Factors on Chetty's Harm, Exceeded Its Limited Role of
               Assessing Whether Chetty is Entitled to Pursue Discovery,
               Especially When Those Other facts, As Pled, Are Not
               Superseding Causes............................................ 23

CONCLUSION............................................................... 27

**APPENDIX, VOLUME I**

Memorandum Opinion, J. O'Neill, April 22, 2013............................    A.1

Plaintiffs' Notice of Appeal, May 22, 2013....................................    A.18

Clerk's Notice to USCA re: Notice of Appeal................................    A.19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 14

*Churbuck v. Union R.R. Co.*, 110 A.2d 210 (Pa. 1955) ............................ 25

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................... 14

*Feeney v. Disston Manor Pers. Care Home, Inc.*, 849 A.2d 590 (Pa. Super. Ct. 2004) ...................................................................................................... 24

*Ford v. Jeffries*, 379 A.2d 111 (Pa. 1977)...................................... 18, 19, 23, 26, 27

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)........................ 15

*Frey v. Smith*, 685 A.2d 169 (Pa. Super. Ct. 1996)................................... 25

*Gould Elecs. v. United States*, 220 F.3d 169 (3d Cir. 2000)..................... 14

*Hamil v. Bashline*, 392 A.2d 1280 (Pa. 1978)..................................... 17, 24

*Herman v. Welland Chem., Ltd.*, 580 F. Supp. 823 (M.D. Pa. 1984) ......... 18, 19, 21

*Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652 (3d Cir. Pa. 1988)  (citing Rest. (Second) Torts, § 442A) ........................... 25, 27

*Jones v. Montefiore Hosp.*, 431 A.2d 920 (Pa. 1981) ........................... 23,25

*Krasevic v. Goodwill Indus., Inc.*, 764 A.2d 561, 569 (Pa. Super. Ct. 2000) ......... 25

*Mahan v. Am-Gard, Inc.*, 841 A.2d 1052 (Pa. Super. Ct. 2003).............. 24

*Maio v. Aetna*, 221 F.3d 472 (3d Cir. 2000) ........................................... 14

*Majors v. Brodhead Hotel*, 205 A.2d 873 (Pa. 1965) .............................. 24

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ..................................... 15

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir.2008).................. 15

*Powell v. Drumheller*, 653 A.2d 619 (Pa. 1995)................................. 24, 25

*Scheuer v. Rhodes*, 416 U.S. 232 (U.S. 1974)......................................... 14

*Summers v. Certainteed Corp.*, 997 A.2d 1152 (Pa. 2010)....................... 19

*Wisniewski v. Great A. & P. Tea Co.*, 581 A.2d 744 (1974) ............... 18, 21

## Statutes

28 U.S.C. §1291 ........................................................................................... 2

28 U.S.C. §1332 ........................................................................................... 1

## Other Authorities

Restatement (Second) of Torts § 431 ........................................................ 18

## Rules

Fed. R. Civ. P. 8(a)(2) ............................................................................... 14

## JURISDICTIONAL STATEMENT

Plaintiff/Appellant, Chetty Holdings, Inc., is a Pennsylvania corporation, with principal place of business at 511 Schoolhouse Road, Suite 100, Kennett Square, Pennsylvania 19348.  Chetty Holdings is the general partner of Plaintiff/Appellant, Millview Apartment Homes, LP, a Pennsylvania limited partnership in which Chetty Holdings, Inc. and Carl E. Chetty, a Pennsylvania citizen, are the only partners.  (Plaintiffs/Appellants Chetty Holdings and Mr. Chetty will together be referred to as "Chetty".)

Defendant/Appellee NorthMarq Capital, LLC, is a limited liability company that is a citizen of both Minnesota and the District of Columbia, with principal place of business at 3500 American Boulevard West, Suite 500, Minneapolis, Minnesota 55431.  Defendant/Appellee, Timothy C. Kuhn, is a citizen and resident of New Jersey, domiciled at 230 North Colonial Ridge, Moorestown, New Jersey 08057.  (Defendants/Appellees NorthMarq and Kuhn will together be referred to as "NorthMarq".)  The District Court possessed subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Chetty now appeals from an April 22, 2013 final Order of the District Court that dismissed all claims as to all parties named in Chetty's Third Amended Complaint.  Chetty timely filed a Notice of Appeal from the District Court's Order

1

on May 22, 2013.  This Court possesses subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether, under the pleading standard embodied in Federal Rule of Civil Procedure 8(a)(2), Chetty's Third Amended Complaint sets forth a claim that the negligent conduct of NorthMarq, in providing commercial real estate advice, was a "substantial factor" and, thus, a proximate cause of Chetty's damages, requiring reversal of the order dismissing the complaint.[1]

Suggested Answer:  Yes.

## RELATED CASES AND PROCEEDINGS

Chetty is not aware of any case or proceeding that is in any way related, pending or about to be presented before this Court or any other court or agency, state or federal.

---

[1]  The issue of proximate cause was raised in NorthMarq's Motion to Dismiss the Third Amended Complaint (*see* A.410; A.370), and Chetty addressed this issue in a Response and associated Brief, (*see* A.414).

2

## STATEMENT OF THE CASE

This case was removed to the United States District Court for the Eastern District of Pennsylvania on July 25, 2011 based upon diversity of citizenship. (*See* A.21.) The complaint filed in the Philadelphia Court of Common Pleas included claims for negligence, negligent misrepresentation, fraudulent misrepresentation/concealment, and concert of action against NorthMarq and various AmeriSphere entities.[2]

In response to a pending motion to dismiss and for summary judgment filed by NorthMarq, Chetty filed a Second Amended Complaint on October 3, 2011. (*See* A.154.) NorthMarq and Kuhn subsequently filed Motions to Dismiss the Second Amended Complaint. (*See* A.194; A.265.) The Motions to Dismiss the Second Amended Complaint do not raise the issue of proximate cause. (*See id.*)

Following briefing on the Motions to Dismiss the Second Amended Complaint, the Court dismissed the claims against NorthMarq and Kuhn with leave to amend. (*See* A.321; A.341.) In regard to the two claims against NorthMarq at issue in this appeal — the claims for negligence and negligent misrepresentation — the District Court ruled that the allegations of the Second

---

[2]    Originally, various AmeriSphere entities were also defendants in this case. Once this case was removed, Amerisphere filed a motion to dismiss which was granted by the District Court. This appeal only concerns certain claims against NorthMarq and Kuhn and, therefore, a detailed recitation of the procedural history with respect to the AmeriSphere defendants is not included.

3

Amended Complaint did not support the finding of a duty. (*See* A.336-37.) Accordingly, the District Court granted Chetty leave to amend so as to allege a legally-recognizable duty. (*See* A.337.)

On May 25, 2012, Chetty filed a Third Amended Complaint. (*See* A.343.) The Third Amended Complaint contains two claims against NorthMarq and Kuhn: negligence and negligent misrepresentation. (*Id.*) In response, NorthMarq filed yet another Motion to Dismiss. (*See* A.410; A.370). The primary focus of the Motion to Dismiss the Third Amended Complaint was an alleged lack of duty. NorthMarq also included a secondary, one-page argument, devoid of any analogous case law, contending that the conduct at issue was not a proximate cause of Chetty's harm. (*See* A.389-90.) After the motion was briefed, the District Court issued an opinion in which it held that The Third Amended Complaint sufficiently alleges the existence of a duty, (*see* A.5-13), but then proceeded to focus on NorthMarq's cursory reference to proximate cause and ruled that this element was not established, (*see* A.13-16). The accompanying order dismissed the Third Amended Complaint, (*see* A.1), and on May 22, 2013, Chetty timely filed a Notice of Appeal, (*see* A.18-19).

## STATEMENT OF THE FACTS

This case arises out of NorthMarq's negligent conduct, misrepresentations, and omissions in wrongfully advising and inducing Chetty to apply for and pursue a 223(f) mortgage loan insured by the Federal Housing Administration of the U.S. Department of Housing and Urban Development (HUD) for the refinance of commercial real estate.

Chetty owned Millview Apartment Homes, a 350-unit apartment complex located in Coatesville, Pennsylvania ("Millview Property"). (A.343: Third Am. Compl. ¶¶ 1-4.) Appellee, NorthMarq Capital, LLC is a commercial real estate firm that, upon information and belief, possessed the requisite licenses to provide commercial real estate financing and brokerage services in Pennsylvania. (*Id.* ¶¶ 5, 9.) Appellee, Timothy C. Kuhn, was a licensed real estate professional and a former Senior Vice President for NorthMarq, who provided real estate services to Chetty with respect to the Millview Property. (*Id.* ¶¶ 11- 13.)

Chetty originally financed the Millview Property through a fifteen-year forward mortgage in the amount of approximately $27,000,000 with Northwestern Mutual Life Insurance Company. (*Id.* ¶ 18.) The terms of the mortgage with Northwestern Mutual included a holdback provision, which imposed a pre-payment penalty, to be enforced in the event that Chetty sought to pay off the indebtedness in full. (*Id.* ¶ 19.)

In early 2008, occupancy at the Millview Property began to drop as a result of an economy on the brink of a major recession. (*Id.* ¶ 21.) In early 2009, Northwestern Mutual contacted Mr. Chetty and verbally advised him that, if he were able to refinance the Millview Property, Northwestern Mutual would be willing to modify the terms of the mortgage loan agreement and waive the pre-payment penalties to allow Chetty to pay-off the indebtedness. (*Id.* ¶ 23.)

In January 2009, Kuhn initiated discussions with Mr. Chetty. (*Id.* ¶ 24.) Kuhn represented that he and NorthMarq were experienced real estate professionals, with the requisite skills to advise Chetty with respect to options as to the Millview Property. (*Id.* ¶ 25.) Kuhn conducted a comprehensive review of the assets of Chetty Holdings, including the financial status of Millview, and made recommendations solely relating to refinance of this property. (*Id.* ¶ 26.)

In the Spring of 2009, Kuhn, with full knowledge of Chetty's financial situation and the occupancy rate at the Millview Property, advised Chetty to pursue a refinance of the property by applying for a 223(f) FHA/HUD loan through NorthMarq and its underwriting arm, AmeriSphere Mortgage Finance, LLC. (*Id.* ¶ 30.) Kuhn and NorthMarq either knew or should have known that Chetty did not satisfy the criteria with which HUD evaluated 223(f) loans and should have recommended a sale (or at least concurrent listing) of the Millview Property. (*Id.* ¶¶ 31-33.)

Kuhn was the point person for Chetty throughout the process. (*Id.* ¶ 37.) Prior to and at various times throughout the application process, Kuhn inaccurately and negligently represented to Chetty that, unlike other lenders, HUD evaluated applications for 223(f) loans, including the 223(f) loan sought in regard to the Millview Property, based on the *future* performance and value of the property, not on the creditworthiness of the sponsor or the past performance of the property, such that Chetty's financial situation and prior occupancy issues were not impediments to securing the 223(f) HUD loan. (*Id.* ¶¶ 39-40.)

Starting in the late summer of 2009, upon request by Kuhn and AmeriSphere's underwriting manager Chetty timely provided Kuhn and AmeriSphere with all financial documentation and occupancy information with respect to the Millview Property and openly communicated with Kuhn and AmeriSphere with respect to their financial situation. (*Id.* ¶¶ 41-43.)

Although Northwestern Mutual had verbally agreed to modify the terms of Chetty's mortgage and waive the pre-payment penalty, before Northwestern Mutual would issue a written document with the terms of the modification, it required NorthMarq to provide it with a timeline for completion of the application process and a list of all associated fees. (*Id.* ¶ 46.) Accordingly, on February 3, 2010, NorthMarq produced a timeline (the Timeline) setting forth the phases of the loan application process and associated fees to Northwestern Mutual. (*Id.* ¶ 47.)

In the Timeline, Kuhn represented: the pre-application phase of the process was "on target"; the loan application would be submitted by AmeriSphere to HUD between February 15 and March 1, 2010; HUD would review the application and issue a Firm Commitment within thirty to sixty days of March 1, 2010; and the lender's funding commitment would be complete by May 30, 2010, with the loan to close by July 31, 2010 at the latest. (*Id.* ¶¶ 48-49.)

Based on the Timeline and Kuhn's representations during a telephone conference involving various representatives of Chetty and NorthMarq, Northwestern Mutual subsequently issued a written loan modification agreement restructuring the loan and waiving the pre-payment penalty up to and through July 31, 2010, the date that coincides with the closing deadline provided by Kuhn in the Timeline. (*Id.* ¶¶ 50-52.) Thereafter, Kuhn continuously assured Chetty that no penalty would result even beyond July 31, 2010, despite the fact that Kuhn was aware, or should have been aware, that the dates in the Timeline were not and could not be followed. (*Id.* ¶ 54.)

As a precautionary measure, Chetty signed a listing agreement to advertise that the Millview Property was for sale. (*Id.* ¶ 54.) When Kuhn was made aware of the listing agreement, he became enraged and strenuously objected to Chetty pursuing this course of action, continuously representing that the refinance would

be successful. (*Id.* ¶ 55.) Accordingly, Chetty declined to actively pursue a sale of the Millview Property. (*Id.* ¶ 56.)

Through the first half of 2010, AmeriSphere continued to request, and Chetty provided, additional information relating to Chetty's financial situation, credit, and occupancy, while Kuhn continued to represent that that the pre-application phase was on target. (*Id.* ¶¶ 58-63.) Since Chetty had already produced extensive documentation and the application process appeared to be falling behind schedule according to Kuhn's Timeline, Chetty expressed concerns to Kuhn. (*Id.* ¶ 64.) Kuhn responded by repeatedly representing to Chetty that HUD would issue a Firm Commitment,[3] that the Timeline was accurate, or that Northwestern Mutual would otherwise show leniency with respect to the pre-payment penalty. (*Id.*)

In late April 2010, AmeriSphere completed the HUD loan application and communicated to Chetty that AmeriSphere's internal loan processing committee had approved Chetty's application and determined that Chetty's application met all of the essential criteria for the issuance of a HUD Firm Commitment. (*Id.* ¶¶ 65-66.) NorthMarq and Kuhn, though, knew or should have known that this approval was erroneous and were obligated to provide accurate information as to Chetty's actual ability to qualify for a HUD Firm Commitment. (*Id.* ¶ 67.) Chetty

---

[3] In this context, "Firm Commitment" refers to a decision by HUD to guarantee a refinance.

subsequently wired a $95,040 non-refundable application fee (0.3% of the loan amount) to AmeriSphere, which AmeriSphere forwarded to HUD with Chetty's loan application on April 30, 2010. (*Id.* ¶ 68.)

In May 2010, Chetty received an offer on the Millview Property in the amount of $37,250,000 from a prospective buyer. (*Id.* ¶ 69.) Chetty, in reliance on NorthMarq's representations concerning the criterion on which that application would be evaluated — namely, the future performance of the Millview Property rather than past performance or the creditworthiness of Chetty — declined to act promptly on the offer because Chetty was assured that a Firm Commitment from HUD would be forthcoming. (*Id.* ¶ 70.)

On July 29, 2010, Northwestern Mutual advised Mr. Chetty via telephone and email that, in accordance with the loan modification agreement and despite Kuhn's representations to the contrary, Northwestern Mutual would not waive the prepayment penalty beyond July 31, 2010. (*Id.* ¶ 74.) Because Northwestern Mutual modified the loan based upon Kuhn's previous representations, the prepayment penalty would increase to approximately $65,000 a day for each day beyond July 31, 2010. (*Id.* ¶ 75.)

On July 30, 2010, HUD denied Chetty's 223(f) Application for a Firm Commitment. (*Id.* ¶ 76.) In the denial letter, HUD stated that the application did not meet HUD's "credit risk requirements and standards" as a result of: (1)

*Chetty's capacity to make timely payments* – called into question by "[t]he project's payment history on the Northwestern Mutual Promissory Note [which] showed a number of late and skipped payments and resulted in a loan restructuring with a substantial increase in the interest rate and deferral," as well as "delinquency on other loans"; and (2) *The project's ability to consistently perform* – called into question by the uneven occupancy from "66% in September, 2006 to 88% in August, 2007, to 71% in March, 2009, to 88% currently." (*Id.* ¶ 77.)

All of the facts relating to Chetty's credit, payment history, and the occupancy history of the Millview Property that were cited by HUD as a basis for its denial were known to NorthMarq from the early part of 2009 and throughout the entire application process. (*Id.* ¶ 78.) Even after HUD's denial, Kuhn urged Chetty to continue pursuing HUD for financing and to reconsider the application; and Kuhn even drafted a letter of reconsideration to HUD in Mr. Chetty's name, which he signed and HUD ultimately rejected. (*Id.* ¶ 84.)

Accordingly, Chetty had no choice but to pursue a sale of the Millview Property well after the date on which the pre-payment penalty began to accrue. (*Id.* ¶ 85.) As a result of NorthMarq's negligence and negligent misrepresentations concerning Chetty's ability to secure financing through HUD, Chetty incurred approximately $2,600,000 in pre-payment penalties to Northwestern Mutual, in addition to the $95,040 non-refundable loan application fee, the $5,000 processing

11

fee paid to NorthMarq in July, 2010, $22,000 in consultant fees; and other fees expended by Chetty in conjunction with the loan application process. (*Id.* ¶ 85.)

## SUMMARY OF THE ARGUMENT

The Federal Rules of Civil Procedure embody a liberal pleading standard, requiring only a short, plain statement of the claim for relief. The allegations of the Third Amended Complaint satisfied the liberal pleading standard as to each every element of the negligence and negligent misrepresentation claims asserted therein, including the existence of proximate cause.

In reviewing *de novo* the averments of the Third Amended Complaint to determine whether it states a claim for relief, this Court accepts all well pled facts as true and draws all reasonable inferences in Chetty's favor. Proximate cause is sufficiently pled if there are facts alleged in the complaint to raise a reasonable expectation that discovery will reveal evidence that the negligent conduct was a substantial factor in bringing about the plaintiff's harm. Evaluating the "reasonable expectation" requirement for pleading is not akin to asking whether the pleader will ultimately prevail on the merits. Instead, as long as the well-pled facts demonstrate a right to relief that is plausible on its face, Rule 8(a)(2) is satisfied and the pleading withstands a motion to dismiss.

To satisfy Rule 8(a)(2) in this case, Chetty pled a myriad of specific facts that, when as accepted as true for purposes of a Rule 12(b)(6) motion, demonstrate that NorthMarq's negligent conduct was a substantial factor in causing the alleged harm. Over the course of eighteen months, NorthMarq and Kuhn — real estate professionals who initiated the relationship with Chetty and were entrusted to provide accurate advice on generating working capital from the Millview Property — (1) improperly analyzed the financial performance of the asset, (2) failed to apprise themselves of the underwriting criteria for HUD refinancing; (3) negligently recommended pursuit of a HUD refinance in lieu of a sale of the property as the sole course of action during the time period when there was no pre-payment penalty imposed by the mortgagee, (4) provided a wholly inaccurate timeline to Northwestern Mutual so that it could set the deadline for expiration of the window for waiver of the pre-payment penalty, and (5) advocated that if NorthMarq's plan was followed, no pre-payment penalty would be imposed. Further, by directing that Chetty petition HUD for reconsideration after the denial of a Firm Commitment, NorthMarq delayed the sale of the property, causing additional damages to accrue. In short, the facts alleged plausibly demonstrate that NorthMarq created a series of forces that were in continuous and active operation as to be a proximate cause of Chetty's harm.

Because the Third Amended Complaint contains allegations of a substantial nexus between NorthMarq's negligence and Chetty's harm, it was error for the District Court to make a factual determination of whether the NorthMarq's conduct was a substantial or insignificant cause and remove the question of causation from the province of the jury. Accordingly, the District Court's Order should be reversed and the Third Amended Complaint reinstated.

## ARGUMENT

### I.    STATEMENT OF THE SCOPE AND STANDARD OF REVIEW

This Court exercises plenary review over Rule 12(b)(6) dismissals. *See Maio v. Aetna*, 221 F.3d 472, 481-82 (3d Cir. 2000). Accordingly, the Third Amended Complaint is evaluated under the framework of Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, a court's role is limited to determining if a plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (U.S. 1974). A court does not consider whether a plaintiff will ultimately prevail, *id.*, and a defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim, *see Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by

14

Rule 8(a)(2) need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  More than an unadorned, defendant-unlawfully-harmed-me pleading is expected, *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); however, detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555.

Thus, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  Dismissal is warranted only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This means that a complaint must exhibit enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each element of a claim.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "When there are

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Third Amended Complaint in this case is far from an "unadorned, the-defendant-unlawfully-harmed-me" pleading. To the contrary, it contains detailed factual allegations that satisfy each element of the claims asserted against NorthMarq. Following the framework set forth above, Chetty set forth the history of the parties' relationship, specific acts of negligence, and the effect of those negligent acts in causing Chetty's losses. Applying Rule 8's short, plain statement standard in the context of a Rule 12(b)(6) motion, as informed by the decisions in *Twombly* and *Iqbal*, the Third Amended Complaint sufficiently alleges the existence of proximate cause and states a claim for relief. Therefore, the dismissal of the Third Amended Complaint should be reversed, and the case remanded for further proceedings.

## II    THE DISMISSAL OF THE THIRD AMENDED COMPLAINT SHOULD BE REVERSED, BECAUSE CHETTY SUFFICIENTLY ALLEGED SPECIFIC FACTS THAT, ACCEPTED AS TRUE, DEMONSTRATE A PLAUSIBLE SHOWING OF PROXIMATE CAUSE.

Pleading proximate cause requires a short, plain statement of facts that plausibly demonstrates that an actor's negligent conduct was a substantial factor in bringing about the resulting harm. The conduct need not be the only factor, and,

under Rule 8, a pleader is not required to carry its burden of persuasion in stating a claim for relief.

In this case, the District Court erred case because it did not faithfully apply the federal pleading standard. Instead, it made a merits determination about whether NorthMarq's negligence was a substantial or insignificant cause of Chetty's losses. The District Court concluded — without considering all of the facts — that "Defendants' actions were only one factor in the chain of events leading to the '$2,600,000 in pre-payment penalties to Northwestern Mutual' and plaintiffs' other claimed damages." By subjectively weighing various factors as the cause of the alleged harm, the District Court abandoned its limited role of determining whether the pleading set forth sufficient factual averments to show a reasonable expectation that discovery will reveal evidence in support of the claims. The following sections demonstrate that the Third Amended Complaint indeed establishes the existence of proximate cause.

### A. NorthMarq's Negligent Professional Advice and Conduct, as Alleged, was a "Substantial Factor" in Causing Chetty's Harm.

Proximate cause is "a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of [the] defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm." *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978) (citation omitted).

17

Pennsylvania has adopted the "substantial factor" test found in the Restatement (Second) of Torts § 431 to evaluate the existence of proximate cause. *See Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977). Under Section 431:

> The actor's negligent conduct is a legal cause of harm to another if
>
> (a) his conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Rest. 2d of Torts § 431.

Pennsylvania courts evaluate whether negligent conduct constitutes a "substantial factor" according to considerations found in Section 433 of the Restatement (Second) of Torts. *See Herman v. Welland Chem., Ltd.*, 580 F. Supp. 823, 827 (M.D. Pa. 1984) (citing *Wisniewski v. Great A. & P. Tea Co.*, 323 A.2d 744 (Pa. Super. Ct. 1974)). Section 433 provides:

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a

> situation harmless unless acted upon by other forces for
> which the actor is not responsible;

> (c) lapse of time.

Rest. 2d of Torts § 433.

Because the issue of proximate cause is inherently fact-based, causation is generally a question of fact for the jury. *See Summers v. Certainteed Corp.*, 997 A.2d 1152, 1164 (Pa. 2010). Pennsylvania law is clear that "the determination of whether the conduct of the defendant was a substantial cause or an insignificant cause of plaintiffs' harm <u>should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause</u>." *Ford*, 379 A.2d at 114 (emphasis added) (citation omitted). For instance, the *Ford* court reversed denial of a motion to remove a compulsory non-suit for lack of proximate cause in a negligence case brought by the landowner against appellee adjoining landowner. *Id.* The court held that when a defendant negligently maintains property so as to create a fire hazard to an adjoining property and fire harm results, it would be improper to conclude, as a matter of law, that the negligent conduct in maintaining the fire hazard was an insignificant cause. *Id.*; *see also Herman*, 580 F. Supp. at 823 (denying a defendant's motion to dismiss plaintiffs' negligence and strict liability claims where the court could not rule as a matter of law that proximate cause was absent after accepting as true the allegations in the complaint).

Establishing proximate cause for purposes of Rule 8(a)(2) is accomplished by pleading sufficient facts that create a plausible nexus between the negligence and resulting harm.  Chetty satisfied this standard with the Third Amended Complaint, which alleges that NorthMarq and Kuhn:

(1) reached out to Chetty to offer their services as experienced real estate professionals (A.343 ¶¶ 24-25);

(2) used their purported expertise to analyze the financial and operating aspects of the Millview Property, (*id.*), with knowledge that Chetty's only viable options were to either refinance or sell the property, (*id.* ¶¶ 24-30);

(3) negligently advised Chetty to pursue a HUD 223(f) refinance, despite knowing or failing to apprise themselves that Chetty and the Millview Property did not meet the criteria to obtain such refinancing, (*id.* ¶¶ 30-33);

(4) misrepresented the criteria under which HUD evaluated applications for a 223(f) refinance, (*id.* ¶¶ 39-40);

(5) negligently prepared the Timeline used by Northwestern Mutual to set a deadline for waiver of the modified loan's prepayment penalties, (*id.* ¶¶ 46-52);

(6) strenuously objected to a sale of the Millview Property during the time when Northwestern Mutual was willing to waive pre-payment penalties because of Kuhn's inability to financially benefit from a sale of the property, (*id.* ¶¶ 31-32, 34, 54-57); and

(7) continued to advocate that Chetty pursue the HUD 223(f) refinance well after NorthMarq knew or should

20

have known that HUD was going to deny the application and even after HUD's denial of the Firm Commitment, (*id.* ¶¶ 24-81).

These allegations plausibly result in the conclusion that NorthMarq's "conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm," thus satisfying the statement required by Rule 8 that NorthMarq's negligence was a "substantial factor" in and proximate cause of the ultimate harm. *See* Rest. 2d Torts § 433(b); *Herman*, 580 F. Supp. at 827; *Wisniewski*, 323 A.2d at 747-48. Indeed, these allegations, when viewed in light of the federal pleading standard and accepted as true for the purposes of a motion to dismiss, place responsibility on NorthMarq for Chetty's harm due to NorthMarq's significant actions in providing professional advice to Chetty regarding the Millview Property, negligently pushing Chetty down the path of a highly inadvisable refinance, and otherwise steering Chetty toward prepayment penalties that would not have been incurred but for the substantial effect of NorthMarq's negligence.

Importantly, the District Court's opinion omitted any discussion of the allegations listed above at (5). This omission is significant, because it is alleged that NorthMarq's negligently-prepared Timeline was submitted to Northwestern Mutual and used as the basis for the deadline after which pre-payment penalties would no longer be waived. In this manner, NorthMarq *did* exercise control over

the time period during which the prepayment penalties would be waived. The District Court overlooked this allegation, and incorrectly cited the waiver period as a factor outside of NorthMarq's control. In other words, NorthMarq and Kuhn, who were duty-bound to exercise the requisite skill and judgment of professionals in the field of commercial real estate and who were tasked with generating working capital from the Millview Property, could have avoided the imposition of pre-payment penalties by either crafting a realistic Timeline that would allow for the completion of the refinance with adequate time for listing the Millview Property if the application was denied or recommending a concurrent sale with the pursuit of the HUD application. As alleged in the Third Amended Complaint, sale of commercial real estate involves considerable time to effectuate, so Appellees' failure to advise Chetty to pursue this route — notwithstanding their actual discouragement of this viable alternative — or incorporate this contingency in the Timeline was a substantial factor bearing on the financial losses incurred by Chetty.

Whether the fact-finder ultimately concludes that NorthMarq's conduct caused the harm is irrelevant. As long as the pleading sets forth facts to demonstrate that there is a substantial factor that caused the alleged harm, Chetty has stated a claim for relief.

Accordingly, the District Court erred in determining causation as a matter of law. With the allegations of the Third Amended Complaint raising significant factual issues at the pleadings stage as to NorthMarq's role in causing Chetty's losses, jurors may reasonably differ as to whether the negligent conduct was a substantial cause of that harm. *See Ford*, 379 A.2d at 114. Accepting all well-pleaded facts in the Third Amended Complaint as true, it is plausible that a jury would determine that NorthMarq's negligence was a substantial cause in the imposition of pre-payment penalties against Chetty, as well as the other financial losses that they incurred. In other words, the pleading demonstrates a reasonable expectation that discovery will reveal evidence of proximate cause. Thus, the District Court's dismissal of the Third Amended Complaint should be reversed.

**B. The District Court, by Weighing the Impact of Other Factors on Chetty's Harm, Exceeded Its Limited Role of Assessing Whether Chetty Is Entitled to Pursue Discovery, Especially When Those Other factors, As Pled, Are Not Superseding Causes.**

None of the factors outside of NorthMarq's negligence that may have contributed to Chetty's harm constitutes the type of "superseding cause" necessary to absolve NorthMarq of their liability. Nor do these factors affect the conclusion that NorthMarq's negligence was a substantial factor in causing Chetty's harm. Importantly, the only reasonable inference from the allegations is that NorthMarq's negligence greatly increased the foreseeable risk of harm in light of several

secondary factors, all of which were known or should have been known by NorthMarq.

The District Court's determination that NorthMarq's negligence merely "created a situation harmless unless acted upon by other forces for which the actor is not responsible" impermissibly marginalized the allegations of NorthMarq's negligence and their effect on the harm. (A. 15.) In citing and weighing the effect of other purported factors, the District Court not only enlarged its role at the motion to dismiss stage, but also omitted from its recitation any reference to the allegations regarding (1) NorthMarq's discouragement of a sale of the Millview Property during the window in which pre-payment penalties were waived and (2) Kuhn's role in setting the deadline for that penalty waiver window, both of which are highly relevant to the "substantial factor" inquiry. Moreover, on the face of the Third Amended Complaint, none of the other factors highlighted by the District Court can, at the pleading stage, relieve NorthMarq from liability.

The Pennsylvania Supreme Court has "long held that a defendant is not relieved from liability because another concurring cause is also responsible for producing injury." *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995) (citing *Jones v. Montefiore Hosp.*, 494 Pa. 410, 416, 431 A.2d 920, 923 (1981); *Hamil*, 392 A.2d at 1284). Two or more causes may contribute to and be the proximate cause of an injury. *See Feeney v. Disston Manor Pers. Care Home, Inc.*, 849 A.2d

590, 595 (Pa. Super. Ct. 2004). "[T]he fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923-24 (Pa. 1981) (citing *Majors v. Brodhead Hotel*, 205 A.2d 873, 878 (Pa. 1965)).

Thus, only when an intervening act constitutes a "superseding cause" can an actor be relieved from liability for negligent conduct. *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1060 (Pa. Super. Ct. 2003) (citing *Frey v. Smith*, 685 A.2d 169, 173 (Pa. Super. Ct. 1996)). A superseding cause is an act of a third person or other force "which, by its intervention, prevents the negligent party from being liable for harm to another caused by his or her antecedent negligent conduct." *Mahan*, 841 A.2d at 1060 (citing *Krasevic v. Goodwill Indus., Inc.*, 764 A.2d 561, 569 (Pa. Super. Ct. 2000)). To determine whether an intervening force is a superseding cause, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable." *Powell*, 653 A.2d at 623. In other words "[a]n intervening force is not a superseding cause where the original negligent act or omission creates or increases the foreseeable risk of harm through the intervention of another force." *Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 659 (3d Cir. Pa. 1988) (citing Rest. (Second) Torts, § 442A).

Furthermore, Section 435(1) of the Restatement (Second) of Torts states:

"[if] the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." *See Churbuck v. Union R.R. Co.*, 110 A.2d 210 (Pa. 1955). As explained by the Pennsylvania Supreme Court:

> Comment b of Section 442B of the Restatement of Torts, Second, explains Section 435(1) stating, "If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate. This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons which are not intentionally tortious or criminal. This is to say that any harm which is in itself foreseeable, <u>as to which the actor has created or increased the recognizable risk, is always 'proximate,' no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct</u>."

*Ford*, 379 A.2d at 115 (citing Rest. 2d Torts § 442B, cmt. b) (emphasis added).

In this case, none of the "other factors" cited by the District Court renders NorthMarq's negligence an insubstantial factor in Chetty's harm or otherwise

supersedes NorthMarq's negligence as the proximate cause of that harm.  Rather, the other factors cited by the Court were either known or should have been known by NorthMarq due to NorthMarq's expertise and extensive review of the Millview Property and discussions with Chetty.  (*See* Compl. ¶¶ 24-33.)  Due to NorthMarq's knowledge of all the "other factors" and NorthMarq's misrepresentations and ill-advised actions in navigating Chetty through those factors, NorthMarq's negligence, as alleged, greatly increased the foreseeable risk of harm to Chetty.  It is precisely because NorthMarq either knew or should have known the probability and implications of these "other factors" that proximate cause is established by the Third Amended Complaint.

As such, none of the "other factors" supersede NorthMarq's negligence as a substantial factor in Chetty's injury, and NorthMarq's negligence is a proximate cause of such injury under Pennsylvania law.  *See Ford*, 379 A.2d at 115 (citing Rest. 2d Torts § 442B, cmt. b); *Honeywell, Inc.*, 851 F.2d at 659.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs/Appellants, Chetty Holdings, Inc. and Carl E. Chetty, trading as Millview Apartment Homes, LP, respectfully request that this Court reverse the District Court's dismissal of the Third Amended Complaint and remand this case for further proceedings.

Respectfully submitted,

Date: September 9, 2013          /s/ James G. Lare
                                James G. Lare, Esquire

## **CERTIFICATIONS**

I hereby certify that:

1.    I am a member in good standing of the Bar of this Honorable Court;

2.    this brief complies with the 14,000 word limitation of F.R.A.P. 32; excluding the cover page, tables, and certifications, but including its footnotes, this brief contains 5,898 words;

3.    the text of the printed and electronic versions of this brief are identical; and

4.    the electronic version of this brief was virus checked using McAfee VirusScan 8.0 software on the PDF file being filed with the Court electronically, and no viruses were detected in the file on September 9, 2013.

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

_/s/ James G. Laare_

James G. Lare, Esquire
2000 Market Street – Suite 2300
Philadelphia, Pa 19103

Date:    September 9, 2013

## APPENDIX, VOLUME I

Memorandum Opinion, J. O'Neill, April 22, 2013............................  A.1

Plaintiffs' Notice of Appeal, May 22, 2013...................................  A.18

Clerk's Notice to USCA re: Notice of Appeal................................  A.19

CERTIFICATE OF SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHETTY HOLDINGS, INC., et al.      :
                             :        CIVIL ACTION
          v.               :        No. 11-4640
                             :
NORTHMARQ CAPITAL, LLC, et al.   :
                             :

O'NEILL, J.                                     April 22, 2013

## MEMORANDUM

Now before me is defendants NorthMarq Capital, LLC and Timothy C. Kuhn's[1] motion to dismiss the third amended complaint of plaintiffs Chetty Holdings, Inc. and Carl E. Chetty, trading as Millview Apartment Homes, LP.   For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

This case arises out of plaintiffs' failed effort to obtain a mortgage loan insured by the United States Department of Housing and Urban Development for the refinance of an apartment complex known as the Millview Property.   The facts of this case are familiar to all relevant parties and are detailed in my Opinion of May 1, 2012.   Dkt. No. 50.   I therefore only discuss the facts and procedural history that are relevant to the instant motion.

I previously granted defendants' motions to dismiss plaintiffs' second amended complaint, dismissing certain claims with prejudice and granting plaintiffs leave to amend certain claims. See Dkt. Nos. 50, 51.   Relevant here, I dismissed plaintiffs' claims against NorthMarq and Kuhn for negligence and negligent misrepresentation, finding that plaintiffs' second amended complaint

---

[1]    Plaintiffs' Third Amended Complaint also asserts claims against NorthMarq Capital, Inc. even though I previously dismissed all claims against NorthMarq Capital, Inc. with prejudice.   See Dkt. Nos. 50, 51.   I also previously dismissed plaintiffs' claims against AmeriSphere Multifamily Finance, LLC, AmeriSphere Financial, LLC and AmeriSphere Mortgage Finance, LLC.   Id.

did not sufficiently allege a basis for the alleged duty of "NorthMarq, via its employee Kuhn . . . to exercise such care, skill, prudence and diligence as other members of the profession in advising Plaintiffs with regard to their financial condition, creditworthiness, financing options, and the 223(f) HUD loan application . . . ." Dkt. No. 50 at ECF p. 16-17, citing Second Am. Compl. ¶ 80.

On May 25, 2012, plaintiffs filed a third amended complaint asserting claims for negligence and negligent misrepresentation against NorthMarq and Kuhn.  Dkt. No. 52. Plaintiffs' third amended complaint alleges that "NorthMarq was engaged in the business of providing commercial real estate financing and brokerage services, including loan origination and servicing, to real estate investors, developers, and capital sources," id. at ¶ 8, and that "NorthMarq possessed the requisite licenses to provide such commercial real estate financing and brokerage services in Pennsylvania."  Id. at ¶ 9.  Plaintiffs' third amended complaint also alleges that "Kuhn was an officer, employee and/or agent of Defendant NorthMarq and provided real estate services to Plaintiffs with respect to the Millview Property."  Id. at ¶ 11.  Plaintiffs now allege that "[d]uring his employment with NorthMarq, Kuhn was, upon information and belief, licensed as an Associate Broker pursuant to the laws of New York and licensed as a Broker Salesperson pursuant to the laws of New Jersey."  Id. at ¶ 12.  Plaintiffs' third amended complaint further contends that "Kuhn was not licensed to provide real estate services or real estate financing services under Pennsylvania law."  Id. at ¶ 13.  Plaintiffs assert that "Kuhn represented that he and NorthMarq were experienced real estate professionals, possessing the requisite skills to advise Plaintiffs with respect to their options as to the Millview Property."  Id. at ¶ 25.

Kuhn allegedly "conducted a comprehensive review of the assets of Chetty Holdings, including the financial status of Millview, and made recommendations solely relating to refinance of the property, including an application for a 223(f) FHA/HUD refinancing loan."  Id. at ¶ 26.

-2-

A. 2

According to the allegations in the third amended complaint, "Kuhn, by virtue of his initiation of the relationship with Plaintiffs and his advice to pursue a 223(f) HUD loan, was the point person for Plaintiffs throughout the [223(f) loan application] process." Id. at ¶ 37.   Plaintiffs now allege that, "based upon the financial condition of Plaintiffs, Kuhn and NorthMarq should have advised Plaintiffs to list the Millview Property [for sale] even while simultaneously pursuing an application for a 223(f) HUD loan, to prevent Plaintiffs from incurring any pre-payment penalties." Id. at ¶ 31.   The third amended complaint asserts that "

> [r]ecommending that Plaintiffs simultaneously pursue a sale of the Millview Property would have been proper advice under the circumstances, because sales of commercial real estate usually take many months to complete, and if the refinancing effort were to fail, which was or should have been obvious to Defendants from the inception of the relationship, plaintiffs should have been provided with a realistic, alternate, and concurrent strategy by Kuhn and NorthMarq to avoid prepayment penalties.

Id. at ¶ 32.   Plaintiffs contend that "Kuhn did not recommend a sale of the Millview Property because Kuhn was not a Pennsylvania-licensed broker and, therefore, would be unable to collect a commission and/or fees on any sale of the Property." Id. at ¶ 34.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of

the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  The

complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d

315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made

clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will

no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil

complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.

The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly

and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained that "a complaint must do

more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an

entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d

Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'" Iqbal, 556 U.S. at 679.

-4-

A. 4

## DISCUSSION

### I.    Duty of Care

To prevail on a claim for negligence under Pennsylvania law, plaintiffs must first establish

that defendants owed them a duty of care.   See Merlini ex rel. Merlini v. Gallitzin Water Auth.,

980 A.2d 502, 506 (Pa. 2009).   Plaintiffs' claim for negligent misrepresentation is likewise

premised on the existence of a duty owed to plaintiffs by defendants.   See Bortz v. Noon, 729

A.2d 555, 561 (Pa. 1999).

> The determination of whether a duty exists in a particular case
> involves the weighing of several discrete factors which include:
> (1) the relationship between the parties; (2) the social utility of the
> actor's conduct; (3) the nature of the risk imposed and foreseeability
> of the harm incurred; (4) the consequences of imposing a duty upon
> the actor; and (5) the overall public interest in the proposed solution.

Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000) (citations omitted).

Plaintiffs now allege that "[b]y soliciting Plaintiffs' business and providing advice to

Plaintiffs regarding the Millview Property, Plaintiffs' financial condition, Plaintiffs'

creditworthiness, Plaintiffs' financing options, and the 223(f) HUD loan application, NorthMarq,

via . . . Kuhn, assumed and/or created a duty to render such advice accurately and with reasonable

care, skill, prudence, and diligence." Dkt. No. 52 at ¶ 103.   They further contend that NorthMarq

and Kuhn owed them a duty of care pursuant to: (1) 49 Pa. Code §§ 35.282 and 35.292, regulations

implemented under Pennsylvania's Real Estate Licensing and Registration Act (RELRA), see Dkt.

No. 52 at ¶¶ 92, 93, 104, 105; (2) the New York Real Estate Brokers and Real Estate Salesmen Act,

NY Real Prop. Law § 440 et seq., see Dkt. No. 52 at ¶¶ 94, 106; (3) the New Jersey Real Estate

License Act, N.J. Stat. § 45:15-1 et seq., see Dkt. No. 52 at ¶¶ 95, 107; and (4) defendants' alleged

membership in the National Association of Realtors and that organization's Code of Ethics and

-5-

A. 5

Standards of Practice. Id. at ¶ 108.  I find that plaintiffs' amended allegations are sufficient to establish the requisite duty of care.

**A.    Statutory and Regulatory Provisions**

I find that RELRA, the New York Real Estate Brokers and Real Estate Salesmen Act[2] and the New Jersey Real Estate Licensing Act cannot provide plaintiffs with a basis for their claims of negligence and/or negligent misrepresentation against Kuhn and NorthMarq.  I note first that plaintiffs do not identify any case in which a court has found that any of the listed provisions are sufficient to create a duty of care from a mortgage broker to a client seeking to refinance a real estate loan.

RELRA defines a "broker" as, inter alia, "[a]n individual or entity holding either a standard or reciprocal license, that, for another and for a fee, commission or other valuable consideration, . . . (ii) Negotiates the . . . financing . . . for real estate."  49 Pa. Code § 35.201  Similarly, RELRA defines a "salesperson" as "[a]n individual holding either a standard or reciprocal license, who is employed by a broker to . . . (iv) Negotiate a loan on real estate."  Id.  The New York Act defines a "real estate broker" to include

> any person firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration . . . negotiates or offers or attempts to negotiate, a loan secured or to be secured by a mortgage, other than a residential mortgage loan . . . or other incumbrance [sic] upon or transfer of real estate.

N.Y. Real. Prop. Law § 440.  The New Jersey Act defines a real estate broker in relevant part as "a

---

2       The New York Real Estate Brokers and Real Estate Salesmen Act limits its scope to transactions "in this state," i.e., New York, and thus does not govern advice given or services performed in Pennsylvania.  N.Y. Real Prop. Law. § 440-a.  Even if the requirements of the New York Act could reach past the borders of that state, I find that it would not impose a duty on Kuhn or NorthMarq for the services they rendered to plaintiffs.

person, firm or corporation who . . . offers or attempts or agrees to negotiate a loan secured or to be

secured by a mortgage or other encumbrance upon or transfer of any real estate for others . . . ."

N.J.S.A. 45:15-3.   While Kuhn and NorthMarq's services in this case arguably fall within the

scope of the cited statutory provisions, as defendants observe, none of the statutes provide for a

private right of action.   See Marra v. Burgdorf Realtors, Inc., 726 F. Supp 1000, 1008 (E.D. Pa.

1989) (holding that RELRA "merely grants the State Real Estate Commission the authority to

investigate complaints, hold hearings, and impose penalties.   It does not set out the basis for

private relief; instead, it provides for citizen complaints to the State Real Estate Comission.");

Iwashyna v. Dep't of Hous. & Urban Dev., No. 93-1138, 1993 WL 313702, at *3 n.5 (E.D. Pa.

Aug. 16, 1993) ("Plaintiffs' reliance upon 63 Pa. Stat. Ann. § 455.604 as a basis for their action

against [defendant] is misplaced.   That provision of [RELRA] allows the Pennsylvania State Real

Estate Commission to impose fines, and suspend or terminate real estate licenses, but does not

provide an explicit or implied private cause of action."); NY Real Prop. Law § 440 et seq.[3]; Chung

v. Jang, No. DC-27765-09, 2001 WL 2375056, at *4 (N.J. Super. Ct. App. Div., June 3, 2011)

(finding that "nothing in [the New Jersey Act's] language or history . . . would support a finding

that the [New Jersey] Legislature 'intended to create a private right of action'").   Courts in

Pennsylvania have recognized that the "absence of a private cause of action in a statutory scheme

is an indicator that the statute did not contemplate enforcement for individual harms."   Wagner v.

Anzon, Inc., 684 A.2d 570, 574 (Pa. Super. Ct. 1996) (citations omitted).

"[U]nder Pennsylvania negligence law whether a statute may serve as the basis of liability

is analyzed pursuant to the principles of negligence per se."   Hawley v. Del. & Hudson Ry. Co.,

---

[3]    As defendants argue, "[t]here is no private cause of action suggested anywhere in
the [New York] Act." Dkt. No. 54 at ECF p. 20.

-7-

514 F. Supp. 2d 650, 659 (M.D. Pa. 2007), citing Congini by Congini v. Portersville Valve Co.,

470 A.2d 515, 517-18 (Pa. 1983).   The appropriate analysis for a court to apply in determining

whether a particular legislative enactment will provide a duty under Pennsylvania law is pursuant

to the Restatement (Second) of Torts § 286.   See Congini, 470 A.2d at 517-18.   Neither plaintiffs

nor defendants provide an analysis of whether the Pennsylvania, New York or New Jersey

legislation create a duty pursuant to section 286 of the Restatement (Second) of Torts, which

provides that

> [t]he court may adopt as the standard of conduct of a
> reasonable man the requirements of a legislative enactment
> or an administrative regulation whose purpose is found to be
> exclusively or in part
>
> (a) to protect a class of persons which includes the one
> whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has
> resulted, and
>
> (d) to protect that interest against the particular hazard from
> which the harm results.

Restatement (Second) of Torts § 286.   When, however, a statute is only intended to secure for

"individuals the enjoyment of rights and privileges to which they are entitled as members of the

public, rather than for the purpose of protecting any individuals from harm" a negligence per se

claim usually does not apply.   Restatement (Second) of Torts § 288(b) cmt. c (1965).   None of

the cited legislation is aimed at protecting the interests of any particular class of individuals.

Rather, they were designed to protect the public as a whole.   See Winthrop & Co., Inc. v.

Milgrom, 668 A.2d 557, 560 (Pa. Super. Ct. 1995) ("the rationale underlying statutes such as the

RELRA was the protection of the public and the prevention of fraud")[4], citing Verona v. Schenley Farms Co., 167 A. 317, 320 (Pa. 1933); Dodge v. Richmond, 173 N.Y.S.2d 786, 787-88 (N.Y. App. Div. 1958) (holding the New York Act was "designed to protect the public from inept, inexperienced or dishonest persons who might perpetrate or aid in the perpetration of frauds upon it, and to establish protective or qualifying standards to that end"); Re/Max of N.J., Inc. v. Wausau Ins. Cos., 744 A.2d 154, 158 (N.J. 2000) ("The [N.J.] Brokers Act is designed to protect the public.") (citation omitted).   Because individuals such as plaintiffs are only indirect beneficiaries of the obligations set forth in the New York and New Jersey Acts, I find that the requirements for imposing a duty on defendants pursuant to the cited statutes via section 286 of the Restatement are not satisfied.  Cf. Fallowfield Dev. Corp. v. Strunk, Nos. 89-8644, 90-4431, 1991 WL 17793, at *8-10 (E.D. Pa. Feb. 11, 1991) (declining to allow a claim of negligence per se based on the Pennsylvania Solid Waste Management Act where the statute was "intended to protect the health, safety, and welfare of the community and not individuals seeking to recover pecuniary losses."). Accordingly, I decline to find that the NorthMarq and Kuhn's obligations as brokers licensed under the New York and New Jersey Acts are sufficient to establish that they owed a duty to plaintiffs for the purpose of plaintiffs' negligence and negligent misrepresentation claims.

**B.    National Association of Realtors Membership**

I also find that defendants' alleged membership in the National Association of Realtors is not sufficient to establish that they owed plaintiffs a duty of care under that organization's Code of

---

[4]    In Winthrop, 668 A.2d at 560, the Court further explained that RELRA "was enacted for the benefit of the average consumer who entered into an isolated transaction involving residential real estate or the transfer of a small business and was not designed to apply to the interactions of business persons who regularly deal with complicated stock and asset transfers." From that perspective, plaintiffs, who sought commercial real estate financing for a "350-unit apartment complex," Dkt. No. 52 at ¶ 4, arguably are not among those whose interests RELRA was enacted to protect.

Ethics and Standards of Practice.    In their motion to dismiss, defendants assert that neither

NorthMarq nor Kuhn were members of the National Association of Realtors.    Dkt. No. 54 at ECF

p. 18 n.11.    Even if they were, plaintiffs cite no authority to support the proposition that Kuhn or

NorthMarq's voluntary membership in that organization would give rise to a legally cognizable

duty of care governing their conduct in "providing advice to Plaintiffs regarding the Millview

Property, Plaintiffs' financial condition, Plaintiffs' creditworthiness, Plaintiffs' financing options,

and the 223(f) HUD loan application . . . ."    Dkt. No. 52 at ¶ 103.

### C.    No Fiduciary Obligation

Further, plaintiffs have not alleged any facts to suggest that either NorthMarq or Kuhn

owed them a duty by virtue of some fiduciary relationship with plaintiffs.    Plaintiff alleges that

NorthMarq "was engaged in the business of providing commercial real estate financing and

brokerage services, including loan origination and servicing, to real estate investors, developers,

and capital sources."[5]    Dkt. No. 52 at ¶ 8.    Plaintiffs assert that Kuhn "conducted a

comprehensive review of the assets of Chetty Holdings . . . and made recommendations solely

relating to refinance of the property . . . ."    Dkt. No. 52 at ¶ 26.    They allege that Kuhn

represented that "he and NorthMarq . . . . possess[ed] the requisite skills to advise Plaintiffs with

respect to their options as to the Millview Property,"    Id. at ¶ 25.    Absent from plaintiffs third

amended complaint are any allegations that Kuhn or NorthMarq agreed to act in any interest other

than their own when they provided to plaintiffs advice and recommendations about refinancing the

Millview Property.    Plaintiffs do not allege that Kuhn or NorthMarq exercised substantial control

---

[5]    To the extent that NorthMarq acted as a lender to plaintiffs, there is generally a
presumption that a lender-borrower arrangement is an arms-length relationship.    See Temp-Way
Corp. v. Cont'l Bank, 139 B.R. 299, 318 (E.D. Pa. 1992) (noting the "presumption that the
relationship between lenders and borrowers is conducted at arms-length and the parties are each
acting in their own interest") aff'd, 981 F.2d 1248 (3d Cir. 1992).

over plaintiffs' business affairs.   Nor do plaintiffs claim that Kuhn or NorthMarq owed them a

duty because they were unsophisticated borrowers.   See, e.g., Temp-Way, 139 B.R. at 318

(citations omitted) ("In order to establish the existence of a fiduciary relationship, [plaintiffs] must

each demonstrate that there was an overmastering influence on one side, and weakness,

dependence or trust on the other side at a relevant time."); cf. Com. ex rel. Corbett v. Snyder, 977

A.2d 28, 47-48 (Pa. Commw. Ct. 2009) (recognizing "the trial court had reasonable grounds for

determining that [mortgage brokers] owed a fiduciary duty to Consumers" where the consumers

"trusted and relied on" mortgage brokers and it appeared that the brokers had "vastly superior

access to knowledge about" the loan product offered than did the consumers); In re Barker, 251

B.R. 250, 268 (E.D. Pa. Bankr. 2000) (holding mortgage broker owed a fiduciary duty to an

unsophisticated customer).   I find that plaintiffs' allegations are insufficient to raise a reasonable

expectation that discovery will reveal evidence that Kuhn and NorthMarq owed a fiduciary duty to

plaintiffs.

### D.     Section 299A Restatement (Second) of Torts

I find convincing, however, plaintiffs' argument that Kuhn and/or NorthMarq were subject

to a duty as licensed professionals pursuant to Section 299A of the Restatement (Second) of Torts.

Section 299A states that

> [u]nless he represents that he has greater or less skill or knowledge,
> one who undertakes to render services in the practice of a profession
> or trade is required to exercise the skill and knowledge normally
> possessed by members of that profession or trade in good standing
> in similar communities.

Restatement (Second) of Torts § 299A.   While, as plaintiffs contend, "Pennsylvania courts have

explicitly relied upon (and arguably adopted) Section 299A as a basis to impart a variety of

professionals with a duty to render services in accordance with the standards of their profession,"

-11-

A. 11

Dkt. No. 58 at ECF p. 19, none of the cases cited by plaintiff relate to professionals who were licensed as real estate or mortgage brokers.

However, Swantek v. Prudential Property & Casualty Insurance Co., 48 Pa. D. & C. 3d 42 (Pa. Ct. Com. Pl., Erie Cnty. 1988), a case cited by plaintiffs and which held that Section 299A imposed a duty of care on insurance agents, supports the imposition of a duty on defendants. In Swantek, the Court noted that "in order to sell insurance in [Pennsylvania], [an insurance] agent must obtain a license, and if he or she does not, then the agent who continues to sell insurance without a license is subject to certain sanctions including a monetary penalty." Id. at 46. In reaching its holding that Section 299A imposed a duty on insurance agents, the Court remarked that "[i]t is obvious from the statutes that the commonwealth deems an insurance agent to be a professional skilled in the business of insurance matters." Id. at 47. Plaintiffs have alleged that Kuhn and/or Northmarq were subject to similar licensing requirements in Pennsylvania for their conduct as mortgage brokers. Defendants have not argued that they were exempt from the cited licensing requirements.[6] Accordingly, I find that plaintiffs have sufficiently alleged that

---

[6]    I note that RELRA applies to brokers and salespeople with "reciprocal licenses." See 49 Pa. Code § 35.201.  A "reciprocal license" is

> [a] license issued to an individual or entity whose principal place of business for the provision of real estate services is outside of this Commonwealth and who holds a current license to provide real estate services from a state that either has executed a reciprocal agreement with the Commission or has qualifications for licensure which are substantially comparable to those required by the Commission.

Id.  Defendants have not argued that they are not subject to RELRA by way of a reciprocal license.  Although Kuhn was not licensed in Pennsylvania, plaintiffs allege that he was "licensed as an Associate Broker pursuant to the laws of New York . . . ." Dkt. No. 52 ¶ 12.  The Pennsylvania State Real Estate Commission appears to have a reciprocal agreement with New York.  See Real Estate Commission FAQ, Reciprocal Licensure (Mar. 9, 2010),

-12-

defendants owed them a duty to "to exercise the skill and knowledge normally possessed by members of [their] profession or trade in good standing in similar communities."  Restatement (Second) of Torts § 299A

## II.    Proximate Cause

I find, however, that plaintiffs' third amended complaint cannot withstand defendants' motion to dismiss because it does not sufficiently allege that defendants' alleged negligent conduct was the proximate cause of the harm allegedly suffered by plaintiffs.   Under Pennsylvania law, proximate cause is an essential element of plaintiffs' negligence and negligent misrepresentation claims.   See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) (negligent misrepresentation); Holt v. Navarro, 932 A.2d 915, 921 (Pa. 2007) (negligence).

> It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. . . . [the] Supreme Court [of Pennsylvania] has stated that even when it is established that the defendant breached some duty of care to owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury.

Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005) (citations, quotations and alterations omitted), appeal den., 901 A.2d 499 (Pa. 2006).

Pennsylvania has adopted the "substantial factor" test under which "a defendant's negligent conduct is not the proximate cause of the plaintiff's injury unless the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm."   Gallulo v. Fed. Ex. Corp., 937 F. Supp. 392, 395 (E.D. Pa. 1996) (citation and internal quotation omitted).

The following considerations are in themselves or in

---

http://www.portal.state.pa.us/portal/server.pt/gateway/PTARGS_0_160484_771778_0_0_18/RE CIPROCAL2.pdf (last visited April 9, 2013).

A. 13

combination with one another important in determining
whether the actor's conduct is a substantial factor in
bringing about harm to another:

(a) the number of other factors which contribute in
producing the harm and the extent of the effect which they
have in producing it;

(b) whether the actor's conduct has created a force or series
of forces which are in continuous and active operation up to
the time of the harm, or has created a situation harmless
unless acted upon by other forces for which the actor is not
responsible; [and]

(c) lapse of time.

Lux, 887 A.2d at 1287, citing Restatement (Second) of Torts § 433 (1965).   To determine whether

any breach of duty proximately caused plaintiffs' damages, the Court looks to whether a

reasonable person would infer that the injury was the natural and probable result of defendants'

breach of duty.   Commerce Bank/Pa. v. First Union Nat'l Bank, 911 A.2d 133, 142 (Pa. Super. Ct.

2006).

        In support of their negligence claim, plaintiffs allege that defendants breached their duty

by, inter alia, "failing to act with due diligence in assessing Plaintiffs' ability to refinance the

mortgage on the Millview Property," Dkt. No. 52 at ¶ 97(c), "failing to properly evaluate the

capitalization of the Millview Property when assessing Plaintiffs' ability to obtain a 223(f) HUD

loan," id. at ¶ 97(d), "failing to . . . ensure that the loan would close, and that it would close on or

before July 31, 2010," id. at ¶ 97(r); "failing to adhere to the industry standards in the broker

community," id. at ¶ 97(v), and "failing to ensure that the services Kuhn performed on behalf of

NorthMarq would not result in financial detriment to Plaintiffs."   Id. at ¶ 97(w).   Plaintiffs

contend that "as a direct and proximate result of NorthMarq and Kuhn's aforementioned

negligence, plaintiffs were caused to suffer significant financial losses . . . ."   Id. ¶ 99.

-14-

A. 14

Defendants argue that their actions were not a substantial factor in the harm allegedly suffered by plaintiffs – the prepayment penalties plaintiffs incurred upon deciding to sell the Millview Property.  Dkt. No. 54 at ECF p. 21.  Defendants contend that plaintiffs accepted a mortgage with prepayment penalties without defendants' assistance and further, that plaintiffs triggered those penalties when they decided to sell the Millview Property "without any input from Defendants."  Id.  Thus, defendants contend, plaintiffs' own actions caused them harm.  Id.

Plaintiffs counter that

> [h]ad it not been for Defendants initiating a relationship with Plaintiffs, holding themselves out as possessing the requisite professional skills to evaluate the Millview Property, rendering professional services and advice that was contrary to a level of care expected of real estate professionals, and consistently recommending a refinance that was implausible and/or not in the best interest of Plaintiffs . . . Plaintiffs never would have pursued the doomed HUD 223(f) refinance that resulted in significant prepayment penalties, loan application and processing fees and other alleged losses.

Dkt. No. 58 at ECF p. 29.

I find that plaintiffs' allegations establish only that defendants "created a situation harmless unless acted upon by other forces for which [they were] not responsible."  Lux, 887 A.2d at 1287, quoting Restatement (Second) of Torts § 433 (1965).  Defendants' actions were only one factor in the chain of events leading to the "$2,600,000 in pre-payment penalties to Northwestern Mutual" and plaintiffs' other claimed damages.  Dkt. No. 52 at ¶ 86.  Other significant factors included:  (1) the drop in occupancy at the Millview Property, id. at ¶¶ 21, 77(ii); (2) plaintiffs' resultant inability to make timely payments on the Northwestern Mutual loan, id. at ¶¶ 43(a), (b), (c), 77(i); (3) Northwestern Mutual's determination that it would not modify the terms of plaintiffs' mortgage and waive pre-payment penalties after July 31, 2010, id. at ¶¶ 52, 74;

-15-

A. 15

(4) HUD's determination that plaintiffs did not qualify for a 223(f) loan, id. ¶ 76; and (5) plaintiffs'
decision to "pursue a sale of the Millview Property well after the date on which the pre-payment
penalty began to accrue," id. at ¶ 85.

While defendants provided plaintiffs with an assessment of their ability to refinance their
Mortgage and advised plaintiffs of their ability to obtain a 223(f) HUD loan, neither Kuhn nor
NorthMarq could guarantee the outcome of plaintiffs' HUD application.   Likewise, they could
not guarantee that plaintiffs could close on a loan by a date certain and they could not promise that
Northwestern Mutual would indefinitely waive the prepayment penalty.   NorthMarq and Kuhn
could only offer their opinions as to whether or not plaintiffs' HUD application would be approved
and whether Northwestern Mutual would enforce its pre-payment penalty.   Their alleged
negligent acts rest on actions and decisions that were ultimately to be taken or made by HUD and
Northwestern Mutual.   See, e.g. id. at ¶ 64 ("Kuhn continuously represented to plaintiffs that
HUD *would* issue a Firm Commitment . . . or Northwestern Mutual *would* otherwise show
leniency with respect to the prepayment penalty") (emphasis added).   I find that these acts are not
sufficient to show that defendants' alleged wrongs are the proximate cause of plaintiffs' claimed
injuries.   Accordingly, I will grant defendants' motion to dismiss.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHETTY HOLDINGS, INC., et al.         :
                               :        CIVIL ACTION
         v.                   :        No. 11-4640
                               :
NORTHMARQ CAPITAL, LLC, et al.    :
                               :

## ORDER

AND NOW, this 22nd day of April, 2013, upon consideration of defendants NorthMarq

Capital, LLC and Timothy C. Kuhn's motion to dismiss the third amended complaint of

plaintiffs Chetty Holdings, Inc. and Carl E. Chetty, trading as Millview Apartment Homes, LP

(Dkt. No. 54), plaintiffs' response (Dkt. No. 58), defendants' reply (Dkt. No. 59), and plaintiffs'

sur-reply (Dkt. No. 60), it is ORDERED that defendants' motion is GRANTED and plaintiffs'

third amended complaint is DISMISSED.


                                 *s/Thomas N. O'Neill, Jr.*
                              THOMAS N. O'NEILL, JR., J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CHETTY HOLDINGS, INC. and      :    CIVIL ACTION
CARL E. CHETTY, trading as      :
MILLVIEW APARTMENT HOMES, LP  :    Case No. 2:11-cv-04640-TON
                          :
         Plaintiffs      :    **JURY TRIAL DEMANDED**
                          :
        v.            :
                          :
NORTHMARQ CAPITAL, LLC       :
          and         :
TIMOTHY C. KUHN          :
                          :
        Defendants     :

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs, Chetty Holdings, Inc. and Carl E. Chetty, trading as

Millview Apartment Homes, LP, appeal to the United States Court of Appeals for the Third

Circuit from the Opinion and Order dismissing the above-captioned action entered and docketed

in the United States District Court for the Eastern District of Pennsylvania on April 22, 2013

(Docs. 65, 66).

Date: May 22, 2013            Respectfully submitted,

                              /s/ James G. Lare
                              James G. Lare, Esquire
                              Nicolai Andrew Schurko, Esquire
                              MARSHALL DENNEHEY, WARNER,
                              COLEMAN & GOGGIN
                              2000 Market Street, Suite 2300
                              Philadelphia, PA 19103
                              jglare@mdwcg.com
                              naschurko@mdwcg.com
                              (215) 575-2600 (telephone)
                              (215) 575-0856 (facsimile)

                              *Attorneys for Plaintiffs,*
                              *Chetty Holdings, Inc. and Carl E. Chetty,*
                              *Trading as Millview Apartment Homes, LP*

1

### CERTIFICATE OF SERVICE

I, James G. Lare, hereby certify that, on this day, *Plaintiffs' Notice of Appeal* was

electronically filed, served upon the following, and is available for viewing and downloading via

the Court's ECF system:

> Jonathan M. Bye, Karla M. Vehrs, and John J. Laravuso
> LINDQUIST & VENNUM, PLLP
> 4200 IDS Center
> 80 South 8th Street
> Minneapolis, MN 55402
>
> James A. Backstrom
> THE BACKSTROM LAW FIRM
> 2 Penn Center, Suite 200
> Philadelphia, PA 19102
>
> *Counsel for Defendants,*
> *NorthMarq Capital, LLC and Timothy C. Kuhn*
>
>
> The Honorable Thomas N. O'Neill, Jr.
> United States District Court
> Eastern District of Pennsylvania
> U.S. Courthouse
> 601 Market Street, Room 4007
> Philadelphia, PA 19106-1714


Date: May 22, 2013                    /s/ James G. Lare _____
                                      James G. Lare, Esquire

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Chetty Holdings, Inc., Et. Al.

                              11-cv-4640
                              District Court Docket Number

      vs.

Northmarq Capital, LLC, Et. Al.

Notice of Appeal Filed 5/22/13
Court Reporter(s)/ESR Operator(s)

Filing Fee:
      Notice of Appeal_____Paid __X_Not Paid _____Seaman
      Docket Fee         _____Paid __X_Not Paid _____USA/VI

CJA Appointment (Attach Copy of Order)

_____Private Attorney
_____Defender Association or Federal Public Defender
_____Motion Pending

Leave to Proceed In Forma Pauperis status, if applicable: (Attach copy of the Order)

_____Motion Granted
_____Motion Denied
_____Motion pending before district judge

Certificate of probable cause (state habeas corpus): (Attach copy of the Order)

_____Granted
_____Denied
_____Pending

Defendant's Address (for criminal appeals)

Prepared by: S/ Frank Del Campo _____
                           Frank Del Campo
              Deputy Clerk/Signature/Date

**PLEASE APPEND TO THE NOTICE OF APPEAL AND FORWARD TO
THE OFFICE OF THE CLERK, U.S. COURT OF APPEALS**

notapp.frm

A. 20

## CERTIFICATE OF SERVICE

I, James G. Lare, hereby certify that, on this day, Appellants' Brief and

Appendix Vol. I was electronically filed, served upon the following, and is

available for viewing and downloading via the Court's ECF system:


Jonathan M. Bye, Karla M. Vehrs, and John J. Laravuso
LINDQUIST & VENNUM, PLLP
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402

James A. Backstrom
THE BACKSTROM LAW FIRM
2 Penn Center, Suite 200
Philadelphia, PA 19102

*Counsel for Defendants,*
*NorthMarq Capital, LLC and Timothy C. Kuhn*




Date: September 9, 2013                    /s/ James G. Lare
                                           James G. Lare, Esquire



01/9428036.v1